Good morning and may it please the court. My name is Matthew Ong and I represent the Department of Justice. The steps of the Compassionate Release Analysis under United States v. Jones and its progeny are familiar to federal judges at this point. Within a district court's discretion, it must assess whether extraordinary and compelling circumstances exist and then consider whether a reduction is consistent with the 3553A factors. But the district court in this case instead failed to properly revisit its pre-Jones analysis when assessing extraordinary and compelling circumstances and made numerous factual errors that affected both steps of the analysis. More specifically, the district court made three clearly erroneous findings. First, that Ms. Westmoreland was a danger to the community when it had previously decided otherwise and without explaining why. Two, that Ms. Westmoreland's ability to self-care within a prison setting was not hampered. And three, that a reduction to Ms. Westmoreland's mandatory minimum would not result in her immediate release. When taking these errors as a whole, the only conclusion is that Ms. Westmoreland did not receive fair consideration of her situation in front of the district court. This court should therefore remand Ms. Westmoreland's case for a fuller consideration of the extraordinary and compelling circumstances in her case as well as the 3553A factors. Counsel, if we did remand, wouldn't the, or would the reconsideration involve the facts as they are now rather than as they were seven, eight months ago? In light of, you know, one of the things you raise is there was an outbreak apparently, allegedly, toward the end of 2020. This is now eight months later. We presumably have new data on what the situation is. We have vaccination, et cetera. So is there any real difference between a remand, the way you've put it, and a denial where you would be able to make a fresh motion? Yes, Your Honor. The difference would be in whether the district court would be able to rely on some of these findings it had made previously. In the reconsideration order being appealed, the district court relied on its pre-Jones order for both prongs of its... I'm saying basically we need to give him correct guidance. Clearly on the law we do that easily either way. The three facts that you put as to facts, the one I was interested in is the last one where you talked about a reduction in the mandatory minimum. Is that the way to think about it? Am I wrong that under compassionate release you're looking at the sentence as a whole? You're not looking at... I didn't see there was anything that said if a person is in on a mandatory minimum, you can't have compassionate release. So is that correct as the law? And secondly, I didn't really read Judge Nugent as saying he was disabled from giving compassionate release because there was a mandatory minimum. He said, I guess that that would create disrespect for the law if a person with such a sentence. Am I right about that or how did you read it? So I think your point about the mandatory minimum is correct. To clarify, my reading of Judge Nugent's order is that if he were to reduce my client's sentence to the mandatory minimum, that would not release her immediately and thus would not serve the claimed extraordinary and compelling circumstances. But since that 24-month sentence would have released her immediately, that was a clear factual error. And I think that it's important to take these different factual errors and view them as a whole and sort of assess Judge Nugent's three-page reconsideration order and find or conclude rather that Judge Nugent did not give fair consideration to the reconsideration motion below. It's a longer order than we see in many of these cases. I mean, I wouldn't knock it. No, I'm not suggesting you are, but procedurally, I mean, you know, many times it's sort of a check the box and a fragmentary sentence. But that's correct, Your Honor. But in this case where the judge has provided reasoning, if that reasoning is invalid. That's fair. I mean, he seems to have a concern throughout that about your client's dangerousness to the community. I mean, she committed aggravated identity theft, I think, in 2017-18 and has a pretty long record of criminal offenses. I mean, that's a perfectly legitimate consideration, isn't it? It is a legitimate consideration, but the district court had made the exact opposite finding at sentencing when it allowed Ms. Westmoreland to self-report. That's a considerably different potential. Frankly, the danger to the community she poses, because some of it you talk about her aging out, but she's not an armed robber. She's a pretty successful paper paperer where she's gotten enormous amounts of money and she's clearly pretty smart and clever. And letting herself report, she's probably not going to come up with a new scheme in the three or four months and she's not going to flee. As opposed to, you know, you let her out and she still seems to be pretty much of an organizer. I mean, it's nice that she's organized these things in prison, but she's using exactly the same skills to organize folks that the judge might legitimately have said that she's a danger to have new fraudulent schemes. And if the judge had written an analysis in that detail, I think our case would be weaker that the reversal in the judge's decision might be supportable. I mean, we don't have any precedent that says he would have to write that out. I mean, it's sort of, you know, it's just apparent that a decision whether to allow someone to self-report is different in kind from a decision to send somebody back into the community. And, you know, different levels of dangerousness. I mean, you could have, I mean, she could still be a big threat in the latter scenario, but not so much in the former. I mean, he doesn't have to write all that out. Nobody does in these cases. I would submit that at least some explanation that would connect these two things would be useful for meaningful appellate review. And in addition, Ms. Westmoreland was not simply allowed to self-report. She was granted bond in the first instance with the understanding that her case would likely be pending for several months. And in fact, I believe that she was out with no issues for over a year from the initial determination of bond until she was required to self-report. You know, I'm trying to decide what we're trying to address here. We're talking, it seems as though we're talking about whether it would be problematical if she's released and that sort of thing. Is that really what's before us? I thought the focus of the appeal was that the judge failed to provide sufficient explanation for his sentencing. If we send it back, maybe he'll let her out or maybe not. But the primary reason we'd be sending her back was because of the deficiency of the explanation that the judge provided. Is that right? I think that's correct. And that's part of our argument, certainly with the issue of dangerousness, where the judge, I think, made this finding twice, but neither time really explained or supported that reasoning. And I think that's true of the other factual concerns that we have as well. Are any of those concerns about the medical situation? That is, your submission below talks about an outbreak. I didn't see any factual backup, not saying that there wasn't, but in terms of prison reports or something of that sort. Is that simply anecdotal or is there something from the BOP website? That came from the BOP's website, yes. They keep a list of the number of positive cases that they claim are active. Not in the record, but I just looked at that and currently it shows no cases at all. It shows 24 recovered. I presume the judge would be able to look at that on remand. That's correct. And certainly any new facts that we have that we think are favorable are not in front of this court at this time. But yes, one of the factual concerns that we had was about the judge's finding that there was no evidence that Ms. Westmoreland's ability to self-care was hampered within the institution, despite us providing medical records that were attached to a reconsideration motion, I believe. And sort of describing the situation at Alderson at that time. Just like in the brief time that I have left, to note that if the court agrees with our factual concerns, there's very little left in the reconsideration order that would stand. And so on that record alone, there is not enough for meaningful appellate review of Judge Nugent's denial. And as a result, I would request that this court vacate the reconsideration order and remand for a proper determination of Ms. Westmoreland's situation. I will save my remaining arguments for rebuttal. Thank you. Thank you, and you're from the government. May it please the court, good morning. Bryson Gillard, appearing on behalf of the United States of America. The district court properly exercises discretion in determining that Ms. Westmoreland's underlying health conditions did not constitute extraordinary and compelling reasons warranting a reduction in her sentence. Furthermore, the district court, in weighing the $35.55, and in concluding that those also did not support her release, are two independent grounds for this court to affirm the district court's finding. Now as a road map, I would like to begin by addressing the district court's assessment of the $35.55 factors. Just a bit of noteworthiness, the district court judge who issued the September and December orders was also the sentencing judge in this matter. And at his disposal was the pre-sentence report, which is document number 8, as well as document number 20, which is the sentencing minutes of this proceeding. Counsel, I hate to interrupt you, but isn't part of her argument that even though the judge was the original sentencing judge, that circumstances had changed from the original sentencing in terms of the defendant's rehabilitation in prison and the COVID outbreak? When the original sentencing had occurred, there were no COVID cases in that prison facility, and now allegedly there are a number of them. And those kind of factors she was saying the judge did not address or update his explanation in connection with the 3553A factors? Yes, Your Honor, that is Ms. Westmoreland's argument. However, the court did take into consideration all those specific factors, the global pandemic, her age, her underlying health conditions. But supported by the medical records are the fact that her hypertension is well controlled by medication. Furthermore, she complains about an isolated incident about a tooth abscess, which the medical records reflect that on a scale of 1 to 10, that it was a two-level pain. And furthermore, that it was released, her pain was released when she brushed her teeth. Is that really the issue, or is the issue that the judge did not address her changed medical condition? Well, Your Honor, I believe that is the issue. However, the judge did acknowledge… Well, I shouldn't say didn't address it, but didn't adequately address it. I believe that the judge did adequately address it in this matter, Your Honor. And furthermore, as allowable by the law, under post-Elias and Jones, to make that independent determination and deny it solely on a 3553 analysis. And based on her long, lengthy history of crimes of fraud, specifically her last two federal convictions involving in 1993 at the age of 45, where she was sentenced to 45 months for defrauding over $175,000 from the federal government. And most recently for the case that she presently is incarcerated for, where she defrauded $175,000 from the Department of Education and an additional over $25,000 from the Social Security Administration. And not even staying alone from that, one year prior to her federal conviction, she had another fraud-related conviction in state court for giving illegal benefits, namely food stamps in excess of $4,700. So the district court independently decided that based on deterrence principles that she had previously was sentenced to 45 months, at the time of the original September district court decision, she had only served 17 months of her 66-month sentence. And then again in December, approximately 21 of her 66-month sentence. And the district court independently decided that a 21-month sentence would not reflect the seriousness of this crime, would not offer adequate deterrence to Ms. Westmoreland, which is evident by her long history of fraudulent crimes, and that the totality of those circumstances and 3553A factors did not support her release, which this court has held that so long as a district court has a decision based solely on the 3553A factors, you can affirm that decision. And this is similar to the Tomes decision. Whereas in the Tomes decision, that district court improperly bound itself to the Application Note 1 and 1B113, which this court expressly said was impermissible post-Elias and Jones. So unlike the district court in that decision, this district court decision in December did not bind itself to Application Note 1B113, Application Note 1. It only simply used it as a guidepost, which is also permissible under the Tomes case. And therefore, the district court in saying in December order that there is no evidence about her ability to self-care, that is also supported by the record. In her medical records, it's documented that her high blood pressure is well controlled by medication. Furthermore, given her physical ability to move up and down the mountain, she was given a fan pass. She was also given a first-floor cell, a lower bunk cell. And furthermore, the courts did not abuse this discretion to determine that aging Americans both in and out of prison are both experiencing these same issues. And that it's not unusual or extraordinary for aging people to be overweight, which Westmoreland's BMI is 30, which is right at the lowest threshold of being overweight. And like I said previously, her medication controls her high blood pressure. And the court didn't solely make that determination based on her self-care, but also in conjunction with the 3553A factors in making that determination. So it's therefore the government's position that the district court's 3553 analysis alone is sufficient to affirm the district court's decision denying her compassionate release. And the district court did not abuse this discretion in determining that her hypertension and her obesity were not extraordinary and compelling reasons. Were not sufficient to establish extraordinary and compelling reasons which warranted a reduction in her sentence. If there aren't any questions from the bench, I will reserve the United States' arguments and its briefs. And the United States will respectfully request that this court affirm the district court's decision. Thank you. Any rebuttal? I'd just like to make a couple quick points, Your Honors. First, the government stated that Ms. Westmoreland's blood pressure was well-controlled by medication, but the medical records themselves did indicate that she still had blood pressure readings as high as 195 over 100, which we raised in the reconsideration motion. And, of course, that level of blood pressure is considered a hypertensive crisis, which we explained in our briefing, that could cause severe consequences, potentially long-term consequences as well. Given Ms. Westmoreland's symptoms over the course of 2020 that had not been connected to any particular diagnosis, it is unclear what particular medical issue might be causing what, and the BOP had not done any proper investigation of these medical issues. The arguments seem to be about what her medical status is or what her situation happens to be, and that sort of thing, instead of focusing on how the judge, inadequately, if he did, failed to address her current health status at the time the judge made the decision, as well as the other matters. In other words, it seems like the arguments on both sides here are focusing on whether she should, whether there are extraordinary circumstances that should permit her to be let out, instead of focusing on whether the judge's decision was adequately rendered, which is what we're supposed to be addressing, isn't it? That's correct, Your Honor. I understand Your Honor's concern about the fact-found nature of the arguments that we're making. I think that that factual context is relevant to be able to conclude that the judge's order was insufficient and either did not sufficiently consider or demonstrate that the judge considered all of these issues when making that determination about- I know you're almost out of time. Judge Nugent was a sentencing judge originally. That's correct. And so under our precedent and the Supreme Court's precedent, we look to the original sentencing transcript or whatever he did then, in addition to what he's done more recently in determining whether he has an adequate explanation for what he's done with respect to this motion, right? That's correct, yes. But I guess your point is that there are new circumstances since then that he did not adequately address? That's correct. That is our argument. All right. Yeah, thank you. Thank you. Thank you very much. The case is submitted.